UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**WILLIS ABEGGLEN and**
**MARY ABEGGLEN**
2871 South Afton Road
Beloit, WI  53511,

    Plaintiffs,

    v.

**TOWN OF BELOIT,**
**POLICE CHIEF JOHN WILSON**
**TOWN ADMINISTRATOR BOB MUSEUS,**
**TOWN CHAIRMAN GREG GROVES,**
**TOWN SUPERVISOR SHANNON LADWIG,**
**TOWN SUPERVISOR PHIL TABER**
**TOWN SUPERVISOR DICK LaMONTE and**
**TOWN SUPERVISOR DAVID TOWNSEND**

    Defendants.

Case No. Case No. 10-CV-110

---

## AMENDED COMPLAINT

---

The plaintiffs, Willis Abegglen and Mary Abegglen, by their attorney, William R. Rettko, as and for an amended claim against the above named defendants, allege and show to the court as follows:

### NATURE OF THE CASE

This action is brought to secure the plaintiffs' First Amendment right to freedom of speech without incurring a penalty in violation of 42 U.S.C. § 1983.  In addition, this action is brought to secure the plaintiffs' civil rights to equal employment opportunity and to have the same terms, conditions and privileges of employment with the defendant Town of Beloit which

were changed by unlawful employment practices because of retaliation for opposing discriminatory employment practices in violation of 42 U.S.C. §§ 1981, 1983 and 2000e, and the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201, and the Equal Employment Opportunity Commission's Notices of Right to Sue Within 90 Days; a copy of which are attached hereto as Exhibits A and B and incorporated as if set forth at length herein.

## PARTIES

1. Plaintiff, Willis Abegglen ("Willis Abegglen"), is an adult resident of the County of Rock, State of Wisconsin, and has been employed by the Town of Beloit Police Department ("TBPD") from 1980 through February 19, 2010, and was assigned as the TBPD's Deputy Chief from March 2004 through April 2009.

2. Plaintiff, Mary Abegglen ("Mary Abegglen") is an adult resident of the County of Rock, Sate of Wisconsin, and has been employed by the Town of Beloit ("Town") continuously since October 5, 1995 as its Clerk of Court/Dispatcher.

3. Defendant, Town of Beloit ("Town"), is a municipal corporation with its principal offices located at 2871 South Afton Road, Beloit, Wisconsin 53511, and is and was at all material times hereto, a municipal employer, including the employer of Willis Abegglen and Mary Abegglen.

4. Defendant, Police Chief John Wilson ("Chief Wilson"), is and was employed by the Town of Beloit as its Chief of Police, and in that position had the ultimate control over the

TBPD including transfers, job assignments, job responsibilities and the issuance of discipline within the TBPD, and is a party to this action both his individual and official capacity.

5. Defendant, Town Administrator, Bob Museus ("Museus"), at all times relevant to this action is and was employed by the Town of Beloit as its Town Administrator, and as part of his duties and responsibilities advised the Town Board as to harassment/discrimination investigations conducted by the Town as the employer of its municipal employees, staffing issues, and budget constraints.

6. Town Chairman Greg Groves ("Groves"), was at all material times hereto the Town Chairman of the Town Board of Supervisors and voted to approve the demotion of Willis Abegglen from Deputy Chief to Sergeant and the cutback in hours of employment for Mary Abegglen on February 16, 2009.

7. Town Supervisor Shannon Ladwig, was at all material times hereto a Town Supervisor of the Town Board of Supervisors and voted to approve the demotion of Willis Abegglen from Deputy Chief to Sergeant and the cutback in hours of employment for Mary Abegglen on February 16, 2009.

8. Town Supervisor Phil Taber, was at all material times hereto a Town Supervisor of the Town Board of Supervisors and voted to approve the demotion of Willis Abegglen from Deputy Chief to Sergeant and the cutback in hours of employment for Mary Abegglen on February 16, 2009.

9. Town Supervisor Dick LaMonte, was at all material times hereto a Town Supervisor of the Town Board of Supervisors and voted to approve the demotion of Willis Abegglen from Deputy Chief to Sergeant and the cutback in hours of employment for Mary Abegglen on February 16, 2009.

10. Town Supervisor David Townsend, was at all material times hereto a Town Supervisor of the Town Board of Supervisors and voted to approve the demotion of Willis Abegglen from Deputy Chief to Sergeant and the cutback in hours of employment for Mary Abegglen on February 16, 2009.

## STATEMENT OF CLAIMS

11. On November 4, 2008, Police Officer Burkee, the only African American male police officer with the Town, approached Sgt. Dransfield to remind the sergeant he had not received his mandatory 24-hours of in-service training to remain certified as a police officer for the year 2008.

12. Willis Abegglen as Deputy Chief, was responsible for the TBPD's training in assigning persons within the department for training, but was told earlier in 2008 by Officer Burkee that he was looking for a job at another police department and was close to obtaining that job, but when Officer Burkee found that the Town had incurred a hiring freeze, he forgot to inform Deputy Chief Abegglen that he needed his 24 hours of in-service training or that he planned to stay employed with the TBPD.

13. On November 17, 2008, Officer Burkee while in the reporting room left his jacket on a chair and when he came back later to get his jacket, found that it was removed to Chief Wilson's office, and when he went to Chief Wilson's office, the Chief confronted Officer Burkee because the union that represents the police officers for the TBPD filed a memorandum with Chief Wilson asking why the only African American police officer with the TBPD hadn't received his mandatory in-service training hours to remain certified as a police officer.

14. At that time, Chief Wilson yelled at Officer Burkee for raising the race issue as the reason for why he had not gotten his mandatory 24 hours of in-service training and informed

Burkee that the Chief was going to return into Burkee's personnel file a complaint someone made against Burkee for violating their civil rights.

15. After the Chief Wilson/Officer Burkee meeting had taken place, Chief Wilson called Mary Abegglen into his office and informed her that he was upset by a memo received from the Union regarding Burkee's lack of training and that he was going to take efforts to find out who was responsible for the memo at which time Mary Abegglen asked the Chief, "are you sure you want to do that, you've used the "N" word a lot" to which Chief Wilson responded to Mary Abegglen that he was not a racist and, "you're damn right I want to do this."

16. On November 19, 2008, there was a meeting between Officer Burkee, Chief Wilson and Willis Abegglen at which time Burkee denied knowing about the Union's memo or the race issue raised to which Chief Wilson stated, "I want to know who did this. Listen, I'll fire every mother f _ _ __r, I need to find out and I will put everyone on the stand to find out."

17. On November 20, 2008, Chief Wilson met with Willis Abegglen in the Deputy Chief's office at which time Willis Abegglen informed Chief Wilson he needed to sit down because today Abegglen was the teacher and Wilson was the student, and then told Chief Wilson that Abegglen had had enough because Wilson could not threaten to fire people all the time as he was creating a hostile work environment.

18. Chief Wilson responded to Willis Abegglen that, "I'll do whatever I want." To which Willis Abegglen informed Chief Wilson, "No you can't." To which Chief Wilson responded, "No, I can do that." And that after a few seconds stated, "Yeah, you're right."

19. Nonetheless, as a result of the Union's November 17, 2008 memo alleging discrimination against Officer Burkee based on his race for the TBPD's failure to schedule him for a mandatory 24 hour in-service training, an investigation was conducted by the Town in

which Willis Abegglen was interviewed, as well as Chief Wilson, Sgt. Dransfield, Officer Burkee and Detective Luzinski.

20. During Officer Burkee's testimony, he indicated that Chief Wilson retaliated against him for the Union's memo while placing back into personnel file discipline the Chief previously removed and stated, "he'll ding them every f _ _ king time" and threatened Burkee by asking him who wrote the memo and stated, "someone is getting f _ _ king fired . . . I promise you."

21. On December 2, 2008, the Town concluded its investigation and found no act of discrimination.

22. On or about December 12, 2008, a memo which described itself as "a collective concern on behalf of all or majority of the Union's members and claims to be presented based on concerns brought forward to the elected 'union steward'" alleged there were specific incidents in which Chief Wilson used politically incorrect ethnic labels and other non-specific allegations, and that he frequently used such words in the police department offices.

23. This allegation started a second investigation at which time Mary Abegglen was interviewed on December 22, 2008 because her name came up during the investigation when a witness testified he had heard Chief Wilson use the "N" word and identified Mary Abegglen as a witness.

24. Prior to Mary Abegglen's testimony within this investigation, Chief Wilson confronted her and told her that he was not a racist and stated, "you won't have my back," to which Mary Abegglen told the Chief she would not lie for anyone.

25. Shortly after that, Chief Wilson informed other members of the TBPD and the Town that Willis Abegglen and Mary Abegglen were not loyal to him anymore and he was upset

with Willis Abegglen because he believed Willis Abegglen knew about the Union's actions alleging racism against him and failed to warn him about those allegations in advance.

26.   During Mary Abegglen's interview on December 22, 2008, she informed the attorney hired by the Town that she had heard the Chief say the "N" word many times and that the "N" word offended her and that she specifically told Chief Wilson in November 2008 that his use of the "N" word offended her.

27.   On January 5, 2009, the attorney hired by the Town to conduct its investigation reprimanded Chief Wilson for his use of inappropriate language from 2006 through 2008 on eight specific occasions in which he used the "N" word, "sandnigger," "spics," "towel heads," and "dot heads."

28.   At or around the issuance of the reprimand, Willis Abegglen observed the attorney hired by the Town enter the conference room next to Chief Wilson's office and heard both the attorney and Chief laughing.

29.   At that same time, Chief Wilson asked Willis Abegglen to investigate Sgt. Felger for an issue regarding his reporting of overtime as it was alleged Sgt. Felger was requesting more overtime than he actually incurred and Willis Abegglen was to investigate whether that in fact was true.

30.   On January 13, 2009, during the course of Willis Abegglen's investigation, Sgt. Felger took overtime for a staff meeting from 7:00 a.m. to 11:00 a.m. when in fact the staff meeting ended at 10:15 a.m., and when Willis Abegglen confronted Felger about this, Felger told him he had been called into the Chief's office where he stayed until 11:00 a.m. due to the fact the Chief spoke to him about Willis Abegglen and his wife Mary Abegglen.

31. On January 20, 2009, the Union representing the police officers for the TBPD released a press release in the Beloit Newspaper stating they had taken a vote of no confidence against Chief Wilson due to his use of inappropriate language that resulted in a reprimand, the hostile work environment he had been creating, and the fear of retaliation that Union members believed was incurred by Chief Wilson.

32. On that same day, Sgt. Dransfield delivered a report to Museus concerning issues Abegglen had with the overtime Sgt. Felger had been taking which Sgt. Dransfield felt he should be allowed to take if Sgt. Felger's overtime was approved.

33. Willis Abegglen learned of Sgt. Dransfield's report to Museus when Chief Wilson approached him and told Willis Abegglen that Museus was angry that the Dransfield report should have gone to Abegglen as Deputy Chief as opposed to the town administrator, and that Museus was now going to take care of this once and for all.

34. On January 27, 2009, Chief Wilson issued a memo to Museus indicating Felger's request for overtime was not a rule violation, just sloppy keeping of timecards and indicated that Sgt. Felger would be verbally reprimanded.

35. On February 3, 2009, Town employees issued a press release indicating a vote of no confidence against Chief Wilson.

36. On or about February 10, 2009, Mary Abegglen learned that Museus was looking for her job description as Clerk of Courts.

37. On February 16, 2009, the Town Board requested a reorganization of the Town effective April 17, 2009, and unanimously voted to approve the demotion of Willis Abegglen and the cutting of hours for Mary Abegglen from 40 hours to 30 hours and to take away benefits.

38. On February 17, 2009, Museus, together with Groves and Town Attorney William Henderson met with Willis Abegglen and told him that the Deputy Chief position was being eliminated due to the Town restructuring and told him that if he did not retire they would layoff Police Officer Decker because they wanted more cops on the street which made no sense because no additional police officers would be placed on the street by moving Abegglen from Deputy Chief to Sergeant and the layoff of Officer Decker, or by Abegglen's retirement.

39. Being confused by Museus' reasoning, Willis Abegglen asked for a written explanation as to why he was being removed as Deputy Chief to which Museus stated, "you're not going to tell me how to run the Town."

40. As Abegglen left the room from his meeting with Museus and Groves, he noticed two Rock County Sheriff Captains in the outside room and was told by Officers employed by the TBPD that there was an extra Sheriff Deputy patrol car with two deputies sitting in it on a road near Town Hall waiting to be called.

41. As Willis Abegglen learned, the Town officials' meeting with Willis Abegglen had hoped that he would have an outburst at learning of his demotion so they could arrest him.

42. On February 27, 2009, Willis Abegglen informed the Town he would not retire, but would take the sergeant's position under protest and duress.

43. On March 17, 2009, Willis Abegglen received a letter from the Town indicating that his demotion would become effective April 13, 2009.

44. Also on March 17, 2009, Mary Abegglen received a letter indicating that her position would be reduced to 30 hours per work, there would be a change in her insurance coverage with no dental, health, or life benefits effective April 13, 2009.

45. As a result of these changes, the Deputy Chief's position with the TBPD became an administrative position that a civilian currently holds, and Mary Abegglen's position was posted for a new hire.

46. On March 26, 2009, Willis Abegglen learned that the Town Board had the green light to fire him and Mary Abegglen and that Chief Wilson had 100% backing of the Town Board to get that accomplished.

47. On April 13, 2009, Willis Abegglen's position as Deputy Chief was filled by a civilian.

48. Mary Abegglen's reduction in hours and moving of work location from the TBPD to Town Hall was delayed to May 13, 2009 because of an expected installation of cable internet service.

49. No police officer was laid off as a result of Abegglen's demotion.

50. Detective Luzinski who was the Union President and who wrote the initial memo alleging racial discrimination by the TBPD for failing to schedule Burkee for the mandatory 24 hour in-service training was demoted to police officer in the spring of 2009.

51. By June 2009, the Town passed a resolution giving 5% pay raises to Museus, the town treasurer, and the town clerk retroactive to January 1, 2009.

52. Willis Abegglen was on medical leave during April through May 2009, and when he returned to work on May 15, 2009, was notified that he was the target of an internal investigation, and was ordered by Chief Wilson to appear for an interview on May 20, 2009 which was the day before his return to work on May 21, 2009.

53. On or around May 20, 2009, Mary Abegglen was ordered to appear for an investigation on May 21, 2009 by Museus.

54. Both complaints against Willis and Mary Abegglen upon which they were both interviewed for on May 21, 2009 were dismissed because those complaints lacked merit.

55. By this time, Willis Abegglen learned that Chief Wilson said he was targeting Willis Abegglen, Mary Abegglen, Officer Luzinski and Officer Bogdonas for termination by the end of summer 2009 or he would retire.

56. On May 26, 2009, Mary Abegglen was informed by Museus that he should fire her because state statute prohibited employment for married people to work for the same town, but no such state statute exists.

57. Both Willis and Mary Abegglen have been the subject of continuing internal investigations and alleged rule violations since May 2009.

58. Willis Abegglen retired effective February 19, 2010 facing charges upon which Chief Wilson was requesting his termination.

## FIRST CAUSE OF ACTION
## VIOLATION OF FIRST AMENDMENT RIGHT OF FREE SPEECH
## UNDER COLOR OF STATE LAW

59. Reallege and incorporate herein by reference paragraphs 1 through 58 of this Complaint as if set forth at length herein.

60. Willis Abegglen engaged in protected free speech by raising a matter of public concern outside of his official duties by directly informing Chief Wilson that he was creating a hostile work environment and that he was tired of that, and together with testifying in an investigation about the hostile work environment, all of which is a matter of public concern as discrimination/harassment in public employment is a matter of public concern.

61. Mary Abegglen engaged in protected free speech by first questioning Chief Wilson in regard to whether he wanted to retaliate against the Union and its members for making

allegations of racial discrimination against Chief Wilson, and by later participating in an investigation conducted by the Town into allegations of Chief Wilson's use of the "N" word, and then by verifying during that same interview Chief Wilson had used the "N" word several times, and that earlier in November 2008, Mary Abegglen informed Chief Wilson she did not approve his use of the "N" word within the TBPD.

62. Had Willis Abegglen and Mary Abegglen not engaged in these forms of protected speech, the defendants would not have deprived Willis or Mary Abegglen of their First Amendment right of free speech as granted by the United States Constitution which was a substantial and motivating factor in the defendants' decisions to demote Willis Abegglen from Deputy Chief to Sergeant, to cutback Mary Abegglen's fulltime employment to 30 hours per week and in reducing her insurance benefits, and further to allow Chief Wilson to take efforts to manufacture continuous rule violations against Willis and Mary Abegglen in an attempt to force them out of their employment with the Town.

63. The Town has in the past and continues to engage in a commonly known practice of retaliatory demotion and discipline against its officers and employees as a way to prohibit speech protected by the First Amendment of the United States Constitution and has retaliated against other employees for exercising their First Amendment free speech rights as was done against Detective Luzinski and Officer Bogdonas. \

64. Chief Wilson, Town Administrator Museus, Town Chair Greg Groves, Town Supervisors Ladwig, Taber, LaMonte and Townsend were acting under the color of law, but not within the scope of qualified immunity in retaliating against Willis Abegglen and Mary Abegglen because of their conduct and doing so violated the clearly established rights of Willis Abegglen and Mary Abegglen not to be retaliated against, demoted, or hours reduced with

insurance benefits taken away or to be subjected to the intentional disregard of their employee rights.

66. As a direct and proximate cause of the defendants' combined actions of retaliation against Willis Abegglen and Mary Abegglen which resulted in the demotion of Willis Abegglen, the reduction of hours to Mary Abegglen's employment, together with a loss of insurance benefits, and to endure the continued disciplinary procedures for alleged rule violations, they have caused Willis Abegglen and Mary Abegglen monetary damages, damage to their reputations, damage to their right to pursue economic goals, mental anguish, physical suffering, attorney fees and other expenses.

66. The defendants' continued actions and patterns to squelch and intimidate Willis Abegglen and Mary Abegglen in their First Amendment rights of free speech is and was a willful, wanton and intentional disregard of their constitutional rights making punitive damages against the defendants in their individual capacities appropriate and necessary to stop these repeated patterns from occurring in the future.

## SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 2000e FOR RETALIATION

67. Reallege and incorporate herein by reference paragraphs 1 through 66 of this Complaint as if set forth at length herein.

68. The Town, through the actions of Chief Wilson, Town Administrator Museus, Town Chair Groves, Town Supervisors Ladwig, Taber, LaMonte and Townsend retaliated against both Willis Abegglen and Mary Abegglen for engaging in protected activity under Title VII by opposing Chief Wilson's acts of harassment and discrimination in the workplace, and by so stating such opposition to the Chief and to Town investigators, for retaliating against Willis and Mary Abegglen for their participation in the various investigations conducted by the Town

and to Chief Wilson's acts of harassment and discrimination, together with retaliating against Willis and Mary Abegglen for opposing the Chief's discriminatory/harassing acts.

69. The Town retaliated against Willis and Mary Abegglen in violation of Title VII by changing Willis Abegglen's assignment as Deputy Chief to Sergeant and by changing Mary Abegglen's hours of work from 40 hours per week to 30 hours per week and later to 20 hours per week, in addition to taking away insurance benefits and by subjecting both Willis and Mary Abegglen to continuous internal rule violation complaints, many of which had no basis or fact.

70. Had Willis Abegglen and Mary Abegglen not engaged in protected activity under Title VII, the Town would not have retaliated against them for their actions, all of which were a substantial and motivating factor to discredit Willis and Mary Abegglen's reputations by executing a plan to demote Willis Abegglen and to reduce Mary Abegglen's hours in addition to taking away insurance benefits and by subjecting both Willis and Mary Abegglen to continuous internal rule violation complaints.

71. As a result of the retaliation Willis and Mary Abegglen received from the Town, they have suffered compensatory damages, including emotional distress and physical harm, loss of reputation, loss of past and future wages and benefits, together with attorney fees as allowed by law.

72. The Town's actions in retaliating against Willis and Mary Abegglen together with their deliberate and reckless indifference of the Abegglen's protected activity under Title VII entitles Willis and Mary Abegglen to punitive damages as assessed by a jury.

### THIRD CAUSE OF ACTION
### INTENTIONAL DEPRIVATION OF EQUAL PROTECTION
### UNDER THE LAW IN VIOLATION OF 42 U.S.C. § 1983

73.     Reallege and incorporate herein by reference paragraphs 1 through 72 of this Complaint as if set forth at length herein.

74.     Defendants Chief Wilson, Town Administrator Museus, Town Chair Groves, together with Town Supervisors Ladwig, Taber, LaMonte and Townsend, all of whom were acting under color of state law deprived Willis and Mary Abegglen of their rights under the equal protection clause as secured by the United States Constitution in violation of 42 U.S.C. §1983.

75.     As a direct and proximate result of violating the equal protection rights of Willis and Mary Abegglen, the defendants have caused them to suffer compensatory damages including, but not limited to, emotional distress, physical injury, loss of reputation, loss of future wages and benefits, loss of future job opportunities, and attorney fees and costs as allowed for by law.

76.     As a direct and proximate result of the defendants' malicious and reckless actions in depriving Willis and Mary Abegglen of their equal protection rights as provided by the United States Constitution in violation of 42 U.S.C. §1983, Willis and Mary Abegglen are entitled to punitive damages.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981 FOR RETALIATION**

77.     Reallege and incorporate herein by reference paragraphs 1 through 76 of this Complaint as if set forth at length herein.

78.     The Town, through the actions of Defendants, Chief Wilson, Town Administrator Museus, Town Chair Groves, Town Supervisors Ladwig, Taber, LaMonte and Townsend retaliated against both Willis Abegglen and Mary Abegglen for engaging in protected activity under 42 U.S.C. §1981 ("§1981") by opposing Chief Wilson's acts of harassment and discrimination in the workplace against an African American employee and non-white Citizens,

and by so stating such opposition to the Chief and to Town investigators, and for retaliating against Willis and Mary Abegglen for their participation in the various investigations conducted by the Town into Chief Wilson's acts of harassment and discrimination, together with retaliating against Willis and Mary Abegglen for opposing the Chief's discriminatory/harassing acts against persons because of their race.

79.     The Defendants retaliated against Willis and Mary Abegglen in violation of §1981 by changing Willis Abegglen's assignment as Deputy Chief to Sergeant and by changing Mary Abegglen's hours of work from 40 hours per week to 30 hours per work and later to 20 hours per week, in addition to taking away insurance benefits and by subjecting both Willis and Mary Abegglen to continuous internal rule violation complaints, many of which had no basis or fact.

80.     Had Willis Abegglen and Mary Abegglen not engaged in protected activity under §1981, the Defendants would not have retaliated against them for their actions, all of which were a substantial and motivating factor to discredit Willis and Mary Abegglen's reputations by executing a plan to demote Willis Abegglen and to reduce Mary Abegglen's hours in addition to taking away insurance benefits and by subjecting both Willis and Mary Abegglen to continuous internal rule violation complaints.

81.     As a result of the retaliation Willis and Mary Abegglen received from the Defendants, they have suffered compensatory damages, including emotional distress and physical harm, loss of reputation, loss of past and future wages and benefits, together with attorney fees as allowed by law.

82. The Defendants' actions in retaliating against Willis and Mary Abegglen together with their deliberate and reckless indifference of the Abegglen's protected activity under §1981 entitles Willis and Mary Abegglen to punitive damages as assessed by a jury.

**WHEREFORE**, Plaintiff Willis Abegglen and Plaintiff Mary Abegglen respectfully request that this Court:

A. Assume jurisdiction of this case;

B. Declare that the defendants' retaliatory actions against them operated to deny them right of free speech in violation to the First Amendment to the United States Constitution made actionable under 42 U.S.C. § 1983, and enter a declaratory judgment to that effect;

C. Declare the defendants' actions while acting under the color of law caused an unlawful employment practice against Willis Abegglen and Mary Abegglen by their acts of retaliation against them for opposing practices made unlawful by Title VII and 42 U.S.C. §1981, and Willis and Mary Abegglen equal protection as provided by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983;

D. Award compensatory damages against the defendants jointly and severally in the sum of $300,000 each for Willis Abegglen and for Mary Abegglen;

E. Award punitive damages against the defendants jointly and severally in the sum to be determined by a jury in favor of Willis Abegglen and Mary Abegglen;

F. Award plaintiffs their loss of back pay, future pay and benefits.

G. Grant the plaintiffs their costs, disbursements and attorney fees in bringing this action; and

H.     Grant such further relief as the Court deems just and equitable.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Respectfully submitted, this 14th day of September, 2010.

**RETTKO LAW OFFICES, S.C.**
Counsel for Plaintiffs


s/William R. Rettko
State Bar No.: 01002608
15460 W. Capitol Drive, Suite 150
Brookfield, WI  53005
(262) 783-7200